## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

ELIZABETH TURNIPSEED,

    Plaintiff,

      v.

SMITH & WESSON BRANDS, INC., a Nevada
corporation, AMERICAN OUTDOOR BRANDS
CORPORATION, a Nevada corporation,
BUDSGUNSHOP.COM, LLC, a Kentucky limited
liability company, RED DOT ARMS, INC., an
Illinois corporation, ROBERT CRIMO, JR., an
individual, and ROBERT CRIMO, III, an individual,

    Defendants.

CASE NO.  1:22-cv-6359

REMOVED FROM CASE
NO. 22 LA 00000497 IN THE
CIRCUIT COURT OF LAKE
COUNTY, ILLINOIS

## NOTICE OF REMOVAL

    Defendants Smith & Wesson Brands, Inc., and American Outdoor Brands Corporation (collectively, "Smith & Wesson" or "Smith & Wesson Defendants")[1], pursuant to 28 U.S.C. §§ 1331, 1441(c), 1442(a)(1), and 1446, file this Notice of Removal and hereby notify this Court that they are removing the above-captioned case currently pending in the Circuit Court of the 19th Judicial District of Lake County, Illinois to the United States District Court for the Northern District of Illinois.  In support of this Notice of Removal, Smith & Wesson states as follows:

### I.       PROCEDURAL HISTORY

---

[1] Plaintiff has named both Smith & Wesson Brands, Inc. ("SWBI") and American Outdoor Brands Corporation ("AOBC") as separate Defendants in this matter.  However, SWBI and AOBC are the same entity.  Specifically, AOBC simply changed its name to SWBI on or around May 29, 2020.  Notwithstanding that both named Defendants are, in fact, one entity – now SWBI, Smith & Wesson, while reserving all rights, files this notice of removal on behalf of both because Plaintiff has identified the two names as separate Defendants, albeit incorrectly.

1.      The underlying state court case is captioned as *Elizabeth Turnipseed v. Smith & Wesson Brands, Inc., et al.*, docketed as Case No. 22 LA 00000497 in the Circuit Court of Lake County, Illinois.

2.      This lawsuit arises from Robert Crimo, III's ("Crimo's") shootings in Highland Park, Illinois on July 4, 2022.  Plaintiff is a victim of those shootings.

3.      Plaintiff's Complaint seeks relief against six defendants: the Smith & Wesson Defendants; Budsgunshop.com, LLC (a website from which Crimo selected a gun to purchase); Red Dot Arms, Inc. (a gun dealer that allegedly sold to Crimo); Robert Crimo, Jr. ("Crimo's Father"); and Crimo.

4.      SWBI was served on November 1, 2022.  This Notice of Removal is timely.  28 U.S.C. § 1446(b)(2)(B).

5.      The United States District Court for the Northern District of Illinois is the federal judicial district encompassing Highland Park, Illinois.  Therefore, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

## II.      THIS COURT'S JURISDICTION OVER THIS MATTER

6.      This action is removed on the basis of federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).  Removal under 28 U.S.C. § 1442(a)(1) does not require the consent of co-defendants to remove.  *See O'Callaghan v. United States*, 686 F. Supp. 2d 826, 828 (N.D. Ill. 2010).

7.      Alternatively, this action is removed on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(c).  The joinder of claims "arising under the Constitution, laws, or treaties of the United States" against Smith & Wesson and claims "not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by

statute" against the other defendants makes this "entire action" removable under 28 U.S.C. § 1441(c)(1).

8.      The federal claims asserted against Smith & Wesson (Counts I and II) arise from a wholly distinct set of facts than the remaining claims in this action.  Accordingly, Smith & Wesson respectfully submits that, under this alternative basis for removal, this Court "shall sever" the non-removable claims from this action and "shall remand the severed claims to the" Circuit Court of Lake County, Illinois pursuant to 28 U.S.C. § 1441(c)(2).

9.      Under 28 U.S.C. § 1441(c)(2), only the parties named as defendants in connection with the federal law claims need join in or consent to removal.  While consent of the other defendants is not required for removal in this case, defendants Budsgunshop.com, LLC and Red Dot Arms, Inc. nonetheless consent to removal.  Executed documents demonstrating that consent are attached as an exhibit to this Notice of Removal.

### III.    PLAINTIFF'S CLAIMS

10.      Plaintiff alleges that Crimo's Father sponsored the application of his son, Crimo (identified in the Complaint as the "Shooter"), to obtain a Firearm Owners Identification ("FOID") card.  (Compl. ¶ 150.)  According to the Complaint, in June or July of 2020, Bud's Gun Shop sold Crimo a semi-automatic rifle that had been manufactured by Smith & Wesson.  Bud's Gun Shop then allegedly shipped the semi-automatic rifle to Red Dot Arms, a gun dealer located in Illinois, which transferred the firearm to Crimo.[2]  (Id. ¶¶ 19-20, 198.)  On July 4, 2022, during a parade through Highland Park, Illinois, Crimo began shooting from a rooftop into the crowd, wounding Plaintiff and either killing or wounding several others.  (Id. ¶ 3.)

---

[2] Plaintiff collectively refers to Budsgunshop.com, LLC (also herein referred to as "Bud's Gun Shop") and Red Dot Arms as the "Gun Stores" or "Gun Store Defendants."  Smith & Wesson will use those terms as well.

11.     Plaintiff's claims against Smith & Wesson are predicated and rely upon Smith & Wesson's alleged violations of a federal statute—the National Firearms Act of 1934 ("NFA"). Specifically, Plaintiff claims that the M&P semi-automatic rifle purchased by Crimo actually was an illegal "machine gun" under the NFA and federal regulations (*id.* ¶¶ 86-89 (citing 26 U.S.C. § 5845(b)), 92-94 (citing United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") guidance), 108, 114, 184-85); that Smith & Wesson deceptively and unfairly marketed the M&P firearm by failing to identify it as an "NFA weapon" (*i.e.*, a machine gun); and that Smith & Wesson "violated both the NFA and Gun Control Act ('GCA') by manufacturing, transferring, and selling these weapons without" satisfying various transfer, approval, tax, registration and other NFA requirements (*id.* ¶¶ 174-75, 184)—requirements that apply only if M&P semi-automatic rifles are "machine guns" under the NFA as a matter of law (*id.* ¶ 88 (citing 18 U.S.C. §§ 922(b)(4), (o)(1) (making it a crime to possess or transfer machine guns to any person who has not undergone the required registration and authorization process))).

12.     According to Plaintiff, Smith & Wesson's alleged failure to identify their M&P rifles as an NFA weapon (*i.e.*, as a "machine gun") constitutes deceptive or misleading "marketing or advertising, leading people to believe that they can obtain [an M&P rifle] without complying with the NFA's requirements." (*Id.* ¶ 174.)  Plaintiff similarly makes the NFA central to her negligence claim, alleging that "if Smith & Wesson had complied with the requirements of the NFA, [Crimo] would not have been able to access the weapon."  (*Id.* Count II, ¶ 187.)

13.     As further evidence of her singular reliance on the NFA to carry her claims, Plaintiff does not even allege that Crimo saw a Smith & Wesson advertisement, let alone that he was deceived by any particular advertisement.  Instead, Plaintiff pleads that unidentified "people" were misled by Smith & Wesson marketing into violating NFA regulations (*id.* ¶ 174) and pleads "upon

information and belief" that Crimo "was induced or encouraged" by "Smith & Wesson's unfair and deceptive marketing tactics and the public image of AR-15-style weapons they promoted" (*id.* ¶135)—but without supporting facts and without stating when or where the referenced advertisements were deployed, when or if they were discontinued, or whether Crimo or anyone associated with him ever saw or were deceived by such marketing (*id.* ¶¶ 62, 63, 69-71, 80.)

14.     While the Complaint cites to several federal statutes and regulatory determinations that govern its claims (*supra* ¶ 11), others are omitted.  *See, e.g.*, 27 C.F.R. §§ 447.11, 478.11, 479.11 (defining machine guns); ATF Rulings 82-2 and 82-8 (defining machine guns and applying definition); 27 C.F.R. § 479.105 (regulatory requirements for the "transfer and possession of machine guns"); 26 U.S.C. § 5841, 27 C.F.R. § 479.101 (establishing the NFA's central registry for machine guns not within the federal government's control); 26 U.S.C. §§ 5811, 5812, 5841 (registration and tax requirements for transferred NFA firearms); 26 U.S.C. §§ 5871, 5872 (criminal penalties and forfeitures for NFA violations); 26 U.S.C. § 5861(e)-(f) (prohibiting persons from transferring or making a firearm in violation of the NFA); 28 U.S.C. § 599A(c)(1) (establishing the ATF); 18 U.S.C. § 926(a) (delegating authority to the U.S. Attorney General to prescribe rules and regulations pertaining to firearms); 26 U.S.C. §§ 7801(a)(2)(A), 7805(a) (delegating authority to the U.S. Attorney General to promulgate regulations necessary to enforce the NFA and GCA); 28 C.F.R. § 0.130(a)(1)-(2) (U.S. Attorney General, in turn, delegating responsibility for administering and enforcing the NFA and GCA to the ATF Director); 27 C.F.R. §§ 478.1, 479.1 (implementing regulations governing "Commerce in Firearms and Ammunition" and "Machine Guns" including "the procedural and substantive requirements relative to the . . . manufacture, making, exportation, identification and registration of, and the dealing in, machine guns"); 27 C.F.R. § 479.102(c) (permitting ATF director to issue determinations of "whether an

item" is an NFA firearm); 18 U.S.C. § 923 (e)-(f) (authority of U.S. Attorney General to revoke

firearm licenses); 27 C.F.R. §§ 478.73, 478.74, 478.78 (administrative procedures to address ATF

revocation, suspension, or imposition of civil fines for willful violations).

15.     In Count I, Plaintiff couches her claims against Smith & Wesson as violations of

the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA").  In

Count II, Plaintiff purports to assert a common law negligence claim against Smith & Wesson.  In

Count III, Plaintiff asserts a claim against the "Gun Store Defendants" for negligence.  In Counts

IV-VI, Plaintiff asserts claims against Crimo for assault and battery, intentional infliction of

emotional distress, negligence, and negligent infliction of emotional distress.   In Count VII,

Plaintiff asserts a claim against Crimo's father for negligence and negligent infliction of emotional

distress.

## IV.     JURISDICTION

16.     Federal question jurisdiction exists with respect to the claims asserted against Smith

& Wesson in Counts I and II for four separate and distinct reasons:

    a.     First, Smith & Wesson removes this action pursuant to the federal officer

    removal statute, 28 U.S.C. § 1442(a)(1) because of the unique partnership between firearm

    manufacturers and the ATF including, but not limited to, the delegation of specific law

    enforcement functions by Congress and the ATF to firearm manufacturers.

    b.     Alternatively, Smith & Wesson removes this action as a federal claim

    pursuant to 28 U.S.C. § 1331, on three independent grounds.  Plaintiff's state law claims

    are an artfully pleaded attempt to have a state court improperly overturn the ATF's

    determination that semi-automatic rifles, like the M&P rifle, are not "machine guns"

    subject to the regulatory requirements of the NFA.  Such a legal determination would side-

6

step the statutory regime enacted by Congress to classify firearms in this regard. The only vehicle through which Plaintiff could obtain such a determination is by exhausting administrative remedies made available through NFA regulations and a federal claim under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* ("APA"). The artful pleading doctrine justifies removal of Plaintiff's claims into federal court.

        c.     Additionally, Plaintiff's state law claims are removable under *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), because those claims turn on federal issues concerning the classification of firearms under the NFA that are (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

        d.     Finally, Plaintiff's state law claims are completely preempted by a combination of the APA and the NFA because those statutes have completely displaced state law claims that require a state court to decide the classification of a firearm under federal law, particularly where, as here, the proposed classification conflicts with the ATF's longstanding interpretation of federal law.

17.    Plaintiff's claims, though couched as state law claims, actually seek to have a state court declare that the AR-type rifle is a "machine gun" under the NFA, and therefore, have a judicial determination that the AR-type rifle is "illegal." This would have the absurd effect of making instant criminals out of millions of law-abiding AR-type rifle owners.

18.    No state court can make that legal determination, however. The issue of federal law that is necessarily raised by Plaintiff's claims fall within the initial purview of the ATF and, thereafter, the federal courts. This inherently federal issue must be pursued through administrative procedures—namely, through a federal court challenge pursuant to the APA of an existing ATF

7

ruling on whether the M&P rifle is a machine gun under the NFA, or through a request for a new ATF determination and, thereafter, a federal court APA challenge to any adverse determination. Because any determination that the AR-type rifle is really a "machine gun" within the meaning of the NFA (and, therefore, illegal) falls exclusively within the purview of the ATF and federal courts, a state court finding that the M&P rifle is a machine gun would sidestep the federal regulatory regime created by Congress, conflict with the ATF's longstanding interpretation and application of the NFA, and equate to a *de facto* ban on the AR-type rifle. These are issues that must be resolved in federal court and Plaintiff's claims therefore necessarily "arise under" the laws of the United States, making them removable under 28 U.S.C. §§ 1331 and 1441(c).

19.     Plaintiff, at bottom, effectively seeks to hold Smith & Wesson strictly liable for Crimo's alleged criminal conduct. Any finding of strict liability—and any finding of liability even if Plaintiff's claims did *not* sound in strict liability—requires recourse to federal law, namely, findings that (i) the M&P rifle used by Crimo was a machine gun under the NFA and its interpreting regulations, and (ii) Smith & Wesson unlawfully manufactured and allowed the firearm to be placed into the stream of commerce, and therefore should be held liable for Crimo's eventual decision to purchase the M&P rifle and use it for criminal purposes. *See, e.g.*, Compl. ¶¶ 86, 108, 114 (general allegations), 174-175 (Count I), 184-187 (Count II).

A.     **Plaintiff's claims support federal officer removal under 28 U.S.C. § 1442(a)(1).**

20.     Smith & Wesson, like other federally licensed firearm manufacturers, operates in what the ATF refers to as a special "partnership" with the ATF to implement and enforce the Congressional intent underlying the GCA and NFA. *See, e.g.*, *Open Letter to All Federal Firearms Licensees*, U.S. Dep't of Just. (Jan. 14, 2004), https://www.atf.gov/firearms/docs/open-letter/all-ffls-jan2004-open-letter-importance-partnerships-between-atf-and/download (last viewed Nov. 2,

8

2022). The ATF itself has recognized the "importance of the partnerships that have been established between ATF and the firearms industry and . . . our joint responsibilities under the [GCA]." *Id*. This is just the sort of "special relationship" between a private company and a federal agency or officer that supports federal officer removal. *See Watson v Phillip Morris Co., Inc.*, 551 U.S. 142, 157 (2007).

21.     Removal under 28 U.S.C. § 1442(a)(1) is appropriate where, like here, a company is acting under the direction of or in partnership with the federal government. *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020) (manufacturers demonstrated sufficient connection between their actions and federal mandates, demonstrating they were acting under color of federal office sufficient to support removal under federal officer removal statute); *see also Watson*, 551 U.S. at 147 ("The words 'acting under' are broad, and this Court has made clear that the statute must be 'liberally construed.'"). Smith & Wesson meets that standard.

22.     Smith & Wesson is a "person" within the meaning of the statute because the term includes "corporations and companies." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012).

23.     The "partnership" between ATF and the firearm industry was created by Congress and delegates certain law enforcement functions to firearm manufacturers. For example, in place of a federal firearms ownership registry (and the risks to the Constitution that such a registry would entail), recordkeeping requirements concerning the acquisition or disposition of firearms that would otherwise rest with the ATF have been delegated to firearm manufacturers. *See, e.g.*, 18 U.S.C. § 923(g)(1)(A); 27 C.F.R. §§ 478.123-478.125.

24.     Smith & Wesson also has been delegated and performs law enforcement functions, such as maintaining the records from which ATF performs traces on firearms recovered by law

enforcement. Smith & Wesson works with the ATF to provide appropriate access to its records for *bona fide* criminal investigations, as well as performing training to federal law enforcement, including the ATF and the Federal Bureau of Investigation, in accordance with federal mandates. 18 U.S.C. § 923(g); *see also How ATF Traces Firearms*, U.S. Dep't of Just. (Aug. 17, 2018), https://www.atf.gov/resource-center/infographics/how-atf-traces-firearms (last viewed Nov. 2, 2022); *Fact Sheet - National Tracing Center*, U.S. Dep't of Just. (Sept. 2021), https://www.atf.gov/resource-center/fact-sheet/fact-sheet-national-tracing-center (last viewed Nov. 2, 2022).

25.     The ATF also plays important roles in the partnership with firearm manufacturers to enforce the NFA and GCA. Among these important roles is the ATF's unique and exclusive authority to determine whether firearms are "machine guns" under the NFA. *See, e.g.*, 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 27 C.F.R. § 479.102; 28 C.F.R. § 0.130(a)(1)-(2). Smith & Wesson performs a wide array of functions under the ATF to give force and effect to ATF's classification of the item, and to Congress's intent in the NFA and GCA. If applicable based on the ATF's classification of the item, these functions may include, for example, the recordkeeping and tracing described above. These functions performed under the ATF also include other specific acts that form the crux of the claims against Smith & Wesson. *See, e.g.*, Compl. ¶ 174-75 (alleging Smith & Wesson "violated both the NFA and Gun Control Act ('GCA') by manufacturing, transferring, and selling these weapons without" satisfying various transfer, approval, tax, registration, and other NFA requirements), 184-86 (alleging that Smith & Wesson "manufactured and transferred the rifle without complying with any of the NFA's requirements, in violation of the Gun Control Act and the NFA"). Like the recordkeeping and trace requirements discussed above, these are jobs that, absent the partnership between the ATF and manufacturers, ATF itself would have to

perform. *See Watson*, 551 U.S. at 154 (discussing *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998)). Smith & Wesson's federal defenses in this action include its dutiful participation in its partnership with the ATF, its reasonable reliance on the ATF playing its role in that partnership (particularly determining whether an item is an NFA machinegun), Smith & Wesson's compliance with ATF guidance and direction, and federal statutory immunities granted to Smith & Wesson.

26.     Given the unique partnership between firearm manufacturers and the ATF including, but not limited to the delegation of specific law enforcement functions by Congress to firearm manufacturers, this action satisfies the requirements of the federal officer removal statute 28 U.S.C. § 1442, which makes the entire action removable. *See Baker*, 962 F.3d at 945 ("removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case"); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3726 (4th ed. 2009) ("Because Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction.").

**B.     Plaintiff's federal claims are removable under the artful pleading doctrine, regardless of whether they are completely preempted.**

27.     Under the artful pleading doctrine, the Court is to look beyond how Plaintiff has attempted to frame her claims to discern whether Plaintiff does not plead "anything other than the application and interpretation of federal law." *City of Chi. v. AT&T Broadband, Inc.*, No. 02 C 7517, 2003 WL 1888839, at *3 (N.D. Ill. Apr. 15, 2003). Where the plaintiff has artfully pleaded his claims in such a manner courts may "conclude that a plaintiff's claim actually arose under federal law and is therefore removable." *Id.* Although the artful pleading doctrine often arises in

11

the complete preemption context, they "are not one and the same." *Id.* Each is an "independent corollary" to the "well-pleaded complaint rule" and each provides a separate and independent basis for removal. *Id.*

28.     Under the artful pleading doctrine, "a plaintiff may not frame his action under state law to omit federal questions that are *essential* to recovery." *Id.* (emphasis added). Here, the Complaint artfully pleads claims in the guise of state-law statutory and negligence claims, but the federal question arising under the NFA is essential to any recovery by Plaintiff. That becomes even more clear given how plainly "insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit" its purported state law claims really are. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *see also Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). Where, as here, state-law bases are insubstantial, the claims "necessarily raise federal questions" regarding the alleged violation of the NFA. *Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, No. 19 C 3210, 2019 WL 3080929, at *2 (N.D. Ill. July 15, 2019) (citing *Shapiro*, 577 U.S. at 45-46). Put another way, absent Plaintiff's allegation that Smith & Wesson violated the NFA, an issue of federal law, the claims against Smith & Wesson cannot succeed.

29.     The purported state law claims are plainly insubstantial, implausible and foreclosed without a violation of the NFA and related regulations—the central federal issue. For example, causation is a necessary element of each claim against Smith & Wesson. *See Robinson v. Walgreen Co.*, No. 20 C 50288, 2022 WL 204360, at *6 (N.D. Ill. Jan. 24, 2022) (ICFA); *Quiroz v. Chi. Transit Auth.*, 2022 IL 127603, ¶ 12 (negligence). However, the Illinois Supreme Court has foreclosed the issue of causation in claims against firearm manufacturers where "the claimed harm is the aggregate result of numerous unforeseeable intervening criminal acts by third parties not under defendants' control." *Young v. Bryco Arms*, 213 Ill. 2d 433, 446-56 (2004); *see also City of*

*Chi. v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 394-414 (2004) (firearm dealers' conduct cannot "be deemed a legal cause of a nuisance that is the result of the aggregate of the criminal acts of many individuals over whom they have no control").

30.     The Illinois Supreme Court has also foreclosed negligence claims against firearm manufacturers by holding that they "owe no duty . . . to prevent their firearms from 'ending up in the hands of persons who use and possess them illegally.'"  *Beretta*, 213 Ill. 2d at 390-94; *see also Riordan v. Int'l Armament Corp.*, 132 Ill. App. 3d 642, 647 (1st Dist. 1985) (firearm manufacturer has no duty to plaintiffs in wrongful death action to control the distribution of its products). Plaintiff seeks to circumvent that law by essentially pursuing a strict liability claim against Smith & Wesson.  *See Linton v. Smith & Wesson*, 127 Ill. App. 3d 676, 678-79 (1st Dist. 1984) (firearm manufacturer has no duty to control the distribution of its product to the public).  But that *too* is rendered insubstantial, implausible, and foreclosed by the absence of causation.  *See Walker v. Macy's Merch. Group, Inc.*, 288 F. Supp. 3d 840, 855 (N.D. Ill. 2017).  That is why Plaintiff must ultimately rely on a claim that Smith & Wesson violated *federal law* by manufacturing a machine gun and placing it into the stream of commerce without complying with NFA requirements. Plaintiff also simply concludes that Smith & Wesson "negligently marketed the Rifle to civilians for criminal purposes" (Compl. ¶¶ 161, 183).  Indeed, Plaintiff sets forth no facts in support of their conclusion—much less facts alleging that Crimo ever saw or relied on such marketing— leaving the alleged NFA violation as the only basis to recover.

31.     The statutory claims are also foreclosed (among other reasons) because Plaintiff does not plead facts supporting a claim that she, much less Crimo, ever saw any of the advertisements, let alone that anyone was deceived by them.  "A consumer cannot maintain an action under the [ICFA] when the plaintiff does not receive, directly or indirectly, communication

or advertising from the defendant." *De Bouse v. Bayer*, 235 Ill.2d 544, 555 (2009). A "misleading statement" is required to maintain an action under ICFA. *Robinson*, 2022 WL 204360, at *7. Plaintiff's Complaint, like the one recently rejected in *Estados Unidos Mexicanos*, alleges in essence that "the violation by Smith & Wesson is that the firearm functions exactly as it is advertised to," but that cannot be deceptive as a matter of law. *Estados Unidos Mexicanos v. Smith & Wesson Brands, Inc.*, No. CV 21-11269, 2022 WL 4597526, at * 21 (D. Mass. Sept. 30, 2022). Nor can the advertisements be "unfair" because "the advertising of lawful conduct to sell a lawful product" (*i.e.*, absent a violation of the NFA) does not "constitute[] an 'unfair' act." *Id.*

32.    The U.S. Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) further demonstrates that Plaintiff's ICFA claims are insubstantial and foreclosed. Acceptance of Plaintiff's theories of liability would effectively ban the sale of all AR-type firearms, even though the Second Amendment protects the right to keep and bear such firearms. Although the *Bruen* Court was focused on government regulation, the law is clear that state court litigation cannot be used to undermine Second Amendment rights and seek relief that is inconsistent with the policies underpinning the Second Amendment.

33.    After clearing the underbrush of the "insubstantial," "implausible," or "foreclosed" claims, it is apparent that Plaintiff has pled federal claims under the APA which seek to invalidate the ATF's longstanding interpretation of the NFA and to bypass the comprehensive federal regime Congress has established to regulate firearms. As such, Plaintiff artfully pleaded state-law claims actually are claims "arising under" federal law within the meaning of 28 U.S.C. § 1331. Plaintiff seeks to transfer to state courts the role that the ATF, Congress, and federal courts have played in regulating firearms and enforcing and interpreting the NFA. *See* 26 U.S.C. § 7801(a)(2); 28 U.S.C.

14

§ 599A(c)(1); 18 U.S.C. § 926(a); 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 28 C.F.R. § 0.130(a)(1)-(2); 27 C.F.R. §§ 478, 479.

34.     Neither the ATF—which is tasked with enforcing the NFA—nor any other federal agency or judicial body has ever accepted Plaintiff's theory that the M&P rifle—or other similar semi-automatic rifles—are machine guns under the terms of the NFA.  To the contrary, the ATF has consistently treated such firearms as outside of the scope of the NFA, not as machine guns that are subject to the regulatory requirements of the NFA, as Plaintiff contends.  Plaintiff cannot use purported state-law claims to collaterally attack in state court a federal agency's binding interpretation of a federal law, particularly where Congress has tasked that agency with interpreting, implementing, and enforcing that law.  But that is what Plaintiff seeks to do here. (Compl. ¶¶ 175, 184.)  Permitting such a collateral attack here risks suddenly making law abiding owners of semi-automatic rifles throughout the country criminal owners of illegal machine guns. It would mean the ATF and federal prosecutors have for decades ignored the (alleged) fact that manufacturers, distributors, and users of semi-automatic rifles are illegally making, selling, and using NFA-regulated machine guns.  And it would lead to a patchwork approach to classification of firearms—with each state court (or jury) issuing different determinations as to whether a particular firearm is a machine gun—in a manner that undermines the federal regulatory regime created by Congress.

35.     To avoid this result, there are administrative and federal court vehicles that Plaintiff could pursue to challenge the ATF's regulatory treatment of the M&P rifle under the NFA. Plaintiff can either challenge existing ATF determinations or, if she believes some additional determination is required, seek a new ATF determination (27 C.F.R. § 479.102; *ATF National Firearms Act Handbook* at 41, U.S. Dep't of Just. (Apr. 2009),

https://www.atf.gov/firearms/national-firearms-act-handbook (last viewed Nov. 2, 2022)) and then bring a federal action seeking judicial review of any adverse determination under the APA (5 U.S.C. § 702). These procedures are the only avenue through which a person can obtain and challenge a formal legal determination as to whether a firearm is a "machine gun" under the NFA, demonstrating that Plaintiff's purported state law claims actually are artfully pleaded federal claims. However, a "plaintiff may not avoid federal jurisdiction by 'artfully pleading' a state claim for what is essentially a federal claim." *Corp. Travel Consultants, Inc. v. United Airlines, Inc.*, 799 F. Supp. 58, 60 (N.D. Ill. 1992). Accordingly, this court has original federal question jurisdiction over this removable action under 28 U.S.C. § 1331.

**C.     Plaintiff's federal claims also are removable under *Grable*.**

36.     "[I]n certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. The *Grable* doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.*

37.     Under this doctrine, even state law claims that are not displaced by federal law "may still arise under federal law for purposes of § 1331 if they 'implicate significant federal issues.'" *Sarauer v. Int'l Ass'n of Machinists and Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 673 (7th Cir. 2020) (quoting *Grable*, 545 U.S. at 312). A complaint presents an "'embedded' federal issue supporting federal-question jurisdiction if it raises a federal issue that is '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (holding that state labor claim properly invoked federal issue supporting federal jurisdiction (citing *Gunn v. Minton*,

568 U.S. 251, 258 (2013))); *see also Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F. 3d 463, 466-67 (7th Cir. 2015) (finding federal court jurisdiction over state court breach of contract claim against state housing authority properly removed because resolution of the dispute turns on the application of a federal statute and HUD regulations).

38.     As explained above, when stripped of the purported state-law bases that are insubstantial, implausible, or foreclosed by prior decisions of the Illinois Supreme Court, as this Court must do, the Complaint is necessarily based on federal issues for two reasons. First, to avoid the fatal issue of the absence of any duty, Plaintiff effectively asserts that Smith & Wesson should be held strictly liable for manufacturing firearms that Plaintiff claims are automatic weapons or machine guns under the NFA and federal ATF regulations. But that strict liability theory can only prevail if the firearm at issue is, in fact, a machine gun *under federal law*. Second, even if the statutory and negligence claims are taken at face value, those claims *still* require the resolution of federal issues—namely, whether the firearm at issue is a "machine gun" under the NFA and federal ATF regulations and whether Smith & Wesson violated the NFA.

39.     Whether under strict liability or as facially pled, these necessary federal issues satisfy the first *Grable* factor because state courts simply are "not entitled to give an independent answer to [these] question[s], different from federal law." *Sarauer*, 966 F.3d at 673; *see also Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, 24 F. 4th, 271, 280 (4th Cir. 2022) (state law contract, unjust enrichment, and negligence claims are removable federal claims because they will be resolved on an analysis of federally approved regulatory tariffs); *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 147 (2d Cir. 2021) (suit seeking injunction against continuing arbitration of sex harassment claims as violating state statute raises issues of federal law of whether the claim was consistent with the FAA); *Bd. of Comm'r of Se. La. Flood Prot. Auth.-E. v. Tenn.*

17

*Gas Pipeline Co., LLC*, 850 F.3d 714, 723 (5th Cir. 2017) (federal issues raised by negligence and nuisance claims give rise to federal jurisdiction where "the vindication of a right under state law necessarily turns on some construction of federal law."); *Knight v. Wal-Mar Stores, Inc.*, 889 F. Supp. 1532, 1538 (S. D. Ga. 1995) ("interpretation of the Gun Control Act is a federal question").

40.    With respect to the second and third *Grable* factors, Smith & Wesson's alleged non-compliance with the NFA is actually disputed—indeed, "it is the central point of dispute" *Sarauer*, 966 F. 3d at 674 (citing *Gunn*, 568 U.S. at 259)—and it is substantial because of its significance "to the federal system as a whole" (*id.*) and because it presents a "nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous similar cases." *Tantaros*, 12 F.4th at 145.

41.    Finally, as to the fourth *Grable* factor, the critical, threshold issues of whether the Smith & Wesson M&P rifle is an automatic weapon or machine gun pursuant to and regulated by the NFA, and whether Smith & Wesson in turn violated the NFA, "can be resolved in federal courts without disturbing the congressionally approved 'balance of federal and state judicial responsibilities.'" *Sarauer*, 966 F.3d at 674-75 (quoting *Gunn*, 568 U.S. at 264).  Removal would not entirely "displace state law or preclude state remedies; it leaves intact the states' legitimate" interests. *Id.*  Illinois courts, for example, would remain free to address alleged violations of state statutes regulating the sale or possession of firearms and to resolve claims of actual consumers alleging they were defrauded into making certain purchases (at least those that did not turn on a resolution of federal law). *See generally Evergreen Square*, 776 F.3d at 468 (breach of contract case belongs in federal court where the contracts must be approved by HUD and their terms are administered pursuant to federal regulations); *Tantaros*, 12 F.4th at 146 ("Absent a special state interest in a category of litigation, or an express congressional preference to avoid federal

adjudication, federal questions that implicate substantial federal interests 'sensibly belong in a federal court.'"). And this is an issue that will "rare[ly]" arise in the context of state court actions—in part because it is an issue that has been and must be resolved by the ATF—meaning that recognizing federal jurisdiction to resolve this issue "will portend only a microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 315.

**D. Plaintiff's claims are completely preempted by federal law.**

42. The "complete preemption doctrine" provides an additional basis for removal of this action under 28 U.S.C. § 1331. *See Burda*, 954 F.2d at 441 n.8. "Although federal preemption is ordinarily a defense, 'once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998).

43. Under the complete preemption doctrine, "a state-law claim may be recharacterized as arising under federal law where Congress has completely preempted a given area of state law so that removal of the claim is proper." *Burda*, 954 F.2d at 441 n.8. It applies where "the federal law has effectively displaced any potential state-law claims." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 596 (7th Cir. 2008). Complete preemption applies where a federal statutory scheme "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

44. The requirements for complete preemption are satisfied here. As explained above, Congress and the ATF have created an exclusively federal framework through which persons can obtain a binding legal determination as to whether a particular firearm falls within the scope of the

NFA. Once agency-level requests for a firearms classification have been exhausted, a plaintiff can seek federal judicial review of that classification under the APA. Through these procedures, Congress has displaced and foreclosed any efforts to obtain in state court a determination as to whether a particular firearm is a "machine gun." Thus, federal law provides the exclusive cause of action for the Plaintiff here to obtain the relief she is seeking: a declaration by a state court that the M&P rifle is a machine gun under the NFA.

45.     The NFA's regulatory regime, together with the APA's judicial review procedures, operate to completely preempt Plaintiff's claims here, which therefore "arise under" federal law for jurisdictional purposes.

## V.     ADDITIONAL PROCEDURAL MATTERS

46.     This Notice of Removal is accompanied by the Complaint and any additional state court filings. Upon filing this Notice of Removal, Smith & Wesson will provide prompt written notification to Plaintiff and will file a Notice of Removal, attaching a copy of this Notice of Removal, with the Clerk of Court for the Circuit Court of Lake County, Illinois.

## VI.     CONCLUSION

WHEREFORE, Smith & Wesson removes the underlying case and preserves any and all rights and defenses, including those available under Rule 12 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Defendants Smith & Wesson Brands, Inc.,
and American Outdoor Brands Corporation

By: */s/ Kenneth L. Schmetterer*

James Vogts
Andrew Lothson
Brett Henne
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
T (312) 222-8517
T (312) 923-8274
T (847) 949-0057
E jvogts@smbtrials.com
E alothson@smbtrials.com
E bhenne@smbtrials.com

Edward S. Scheideman (pro hac vice
forthcoming)
DLA Piper LLP (US)
500 Eighth Street, NW
Washington, DC 20004
T 202.799.4534
E edward.scheideman@us.dlapiper.com

Kenneth Schmetterer
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606
T 312.368.2176
E kenneth.schmetterer@us.dlapiper.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November 2022, I electronically filed the foregoing **Notice of Removal** using the court's electronic filing system. Notice of this filing was sent via email to the following counsel of record:

Jay Edelson
Ari Scharg
David I. Mindell
J. Eli Wade-Scott
Amy Hausmann
**Edelson PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
(312) 589-6370
jedelson@edelson.com
ascharg@edelson.com
dmindell@edelson.com
ewadescott@edelson.com
abhausmann@edelson.com

Erin Davis
Philip Bangle
**Brady Center to Prevent Gun Violence**
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100
edavis@bradyunited.org
pbangle@bradyunited.org

Donna J. Vobornik
Brian E. Cohen
**Dentons**
233 South Wacker Drive, Suite 5900
Chicago, Illinois 60606
(312) 876-7370
donna.vobornik@dentons.com
brian.cohen@dentons.com

*Attorneys for Plaintiff*

*/s/ Kenneth L. Schmetterer*
Kenneth L. Schmetterer